143   573<br>159   611<br>143        573<br>30 SC  295

### HAZLETON CO. v. UNION IMP. CO. ET AL.

APPEAL BY PLAINTIFF FROM THE COURT OF COMMON PLEAS NO. 2 OF PHILADELPHIA COUNTY.

Argued April 17, 1891—Decided October 5, 1891.
[To be reported.]

(*a*) Church contracted to construct a canal for the U. company.   The contract provided for monthly estimates of work done, and for the retention by the company of ten per cent of the price on each estimate, as security for completion of the canal.   On September 14, 1888, such retained percentages, to the aggregate amount of $5,788, were in the company's hands.

Statement of Facts.

(b) On that day, Church drew an order on the company in favor of the plaintiff for $1,600, expressly payable out of his " final estimate." Acceptance of the order was refused by the drawee. Afterwards, being unable to complete the canal, Church assigned his contract and all moneys due on it to Monroe and others, who then made a new contract with the company for its completion.

(c) The new contractors were to be paid the same sums that would have been paid Church, had he continued to prosecute the work in person, and upon completion of the work were to receive the percentages retained by the company on estimates for work done by Church; they agreeing to indemnify the company against all claims of others arising under the contract with Church:

1. As Church did not complete his contract and never became entitled to a " final estimate," the fund on which he drew the order never came into existence. His interest in the retained percentages was conditional, and they never became payable to him. Wherefore, the plaintiff was not entitled, after completion of the work by Monroe and others, to recover upon the order even if regarded as an assignment.

2. The drawer of a draft can impose no duty to pay it to the holder on one who is under no duty to pay the drawer himself, and refuses acceptance. Where there is a debt of the drawer, or a fund belonging to him, in the hands of the drawee, he may draw upon that fund, and clothe the drawee with the right to demand payment; but having no right of payment himself he can confer none.

Before Paxson, C. J., Sterrett, Green, Clark and Williams, JJ.

No. 344 January Term 1891, Sup. Ct.; court below, No. 272 September Term 1889, C. P. No. 2, in Equity.

On October 17, 1889, the Hazleton Mercantile Company, Limited, filed a bill in equity against the Union Improvement Company, and W. Madison Monroe, W. A. Marr and H. B. Search, doing business as W. M. Monroe & Co., praying, upon the facts therein averred with relation to a certain construction contract,

" 1. That the said the Union Improvement Co. be directed by the decree of the court to pay to plaintiffs, out of the moneys in their hands and due upon the contract aforesaid, the said sum of $1,600, with lawful interest on the same from the time the said sum became due; your orators tendering themselves ready and willing to allow all proper charges for expenses to the defendants' debtor, because of the transfer of the debt, and otherwise to do equity in the premises.

Statement of Facts.

" 2. Other relief," etc.

The cause, being put at issue by answers and replication, was referred to *Mr. George Wharton Pepper*, as examiner and master, who on June 4, 1890, filed a report finding in substance the following facts :

On August 1, 1887, the Union Improvement Co. entered into a contract with A. H. Church, by the terms of which Church was to dig and construct a canal, for the purpose of draining coal mines in Luzerne county. The contract provided that the work should be completed by January 1, 1888; made the chief engineer of the company arbitrator between the parties; declared that Church should not sub-let nor assign the performance of the contract without the written consent of the chief engineer, and provided for monthly payments for accepted work, the company retaining ten per cent of such monthly estimates as a guaranty of faithful performance. It was further agreed that if the progress of the work should not be sufficient, in the opinion of the engineer, to insure its completion within the time specified, the company should have the right to employ extra labor at Church's expense, " or the said party of the second part shall have the power to declare this contract void, and may proceed to contract with other parties for the completion of the same ; and any and all retained percentages shall be forfeited by the said party of the first part, and become the property of the said party of the second part."

Under this contract, Church began the work, and although it was not finished at the specified time the company allowed him to continue it. On September 14, 1888, there was due Church by the company $5,788, by way of retained percentages. On that date, Church was indebted to the Hazleton Mercantile Co. in the sum of $1,600, and in payment of the debt gave to that corporation the following order :

" $1,600.                    HAZLETON, Pa., September 14, 1888.

" Pay to the order of Hazleton Mercantile Co., Limited, sixteen hundred dollars, for value received, and charge the same to my account with the Union Improvement Co., to be taken out of my final estimate on Big Black Creek canal.

" A. H. CHURCH.

" To EDWARD ROBERTS, JR.

        " Treasurer Union Imp. Co. "

Statement of Facts

This order was presented to Mr. Roberts a few days after its date by the Hazleton company, but he declined to accept and refused to pay it, and informed the holder that until the work under the contract was completed, it was impossible to tell whether the fund upon which the order was drawn would be in existence.

On October 15, 1888, Church assigned his entire contract with the Union Improvement Co. to W. Madison Monroe, and upon the same date he assigned to W. Madison Monroe, Hendrick B. Search, and William A. Marr all the moneys due him by the Union Improvement Co., whether by way of retained percentages or otherwise. This two-fold assignment was explained by Mr. Marr, who said that all three assignees were jointly interested in the contract, but that Mr. Monroe was to do the active work upon it.

The assignees took without notice of the prior assignment to the Hazleton Mercantile Co. Church died about a week after this assignment. Soon after the death of Church, the Union Improvement Co. learned for the first time of the assignment of the contract to Monroe, Search and Marr, and upon October 29, 1888, entered into an agreement with these parties, as assignees of A. H. Church, by the terms of which W. Madison Monroe was substituted for Church, under conditions similar to those of the old contract, and it was agreed that the work should be completed by January 1, 1889. The agreement contained this clause :

" The parties of the second part, Monroe et al., agree to indemnify the party of the first part from all suits, claims, demands or liability to any person or persons claiming under the said A. H. Church in respect of the said contract of the first day of August, 1887, or the money due under it."

Monroe & Co. went on with the work and completed it, and it was accepted by the Union Improvement Co. The improvement company carried on their books the sums due Monroe & Co., as due to the assignees of A. H. Church. While the work was progressing Monroe & Co. learned for the first time of the order in favor of the Hazleton Mercantile Co. When the final estimate was made, Monroe & Co. refused to allow the Union Improvement to pay the sum of $1,600 to the Hazleton Mercantile Co., although the balance due the contractors at that

date, September 12, 1889, amounted to $7,785.81. Accordingly, the Union Improvement Co. retained the $1,600, with interest, to await the decision of the controversy, and paid the residue to Monroe & Co. Thereupon, the Hazleton Mercantile Co. filed their bill, setting forth these facts and claiming the $1,600, the Union Improvement Co. and Monroe & Co. being joined as defendants. W. Madison Monroe, and H. B. Search, and William A. Marr filed their answers, denying that any funds were due to Church on September 14, 1888, and alleging that the assignment of that date was invalid. To this answer the plaintiff filed a replication. The Union Improvement Co. in its answer admitted the facts as above set forth, declared its readiness to pay the retained fund as the court should direct, and prayed that the Hazleton Mercantile Co. and Monroe & Co. be required to interplead.

The agreement of October 29, 1888, referred to in the foregoing findings, recited the assignment by Church to Monroe of the original contract in consideration of a large debt due from Church to Monroe, and the assignment to Monroe, Search and Marr of any moneys due to Church under said contract; that, after the assignments, work had been continued by the men employed by Church, without notice to the improvement company of any changes; that, whether there would be anything remaining of the fund made up of retained percentages of the price of work done by Church, which could be demanded by the assignees thereof, would depend upon whether the work should be completed without requiring this reserve fund to be used in paying for wages, materials, etc.; and that it was believed "that the assignee of the contract can complete the work provided for in the contract, at less cost and expense than if the same were undertaken by the party of the first part, and may derive some benefit from it." The agreement then provided that Monroe should complete the canal in accordance with the original specifications by January 1, 1889, and further stipulated, inter alia, as follows:

"2. He (Monroe) will pay all the persons that were employed by A. H. Church in the performance of the work, or who have been actually working on the canal, either as superintendent, mechanics, or laborers, or in any other capacity, and the rents of houses and buildings due the party of the first

Statement of Facts.

part, and will assume the said rents for the future, of houses occupied by men employed on the work.

"3. There shall be paid to him by the party of the first part the same sums that would be paid under the contract to the said A. H. Church, had he continued to prosecute the work in person.

"4. If, at the completion of the work and the acceptance and approval thereof, as provided in the above-recited contract, there shall remain anything in the hands of the party of the first part, of the money due A. H. Church under the terms of this contract, on the fifteenth day of October, 1888, the same shall be paid to the said parties of the second part."

Upon the facts found by him, the master reported his conclusions of law in substance as follows:

1. That the act of the Union Improvement Co. in contracting with Monroe & Co., did not cause Church to forfeit or in any way lose his right to the retained percentages in the hands of the improvement company; and, inasmuch as the claim of the plaintiffs was prior in time to that of Monroe & Co., the plaintiffs were entitled to the $1,600, if the order of September 14, 1888, was a valid assignment to them of that amount.

2. That, upon both principle and authority, the order of September 14, 1888, was a valid assignment of so much of the moneys in the hands of the Union Improvement Co., its validity not depending upon acceptance by the debtor; citing and discussing: Mandeville v. Welch, 5 Wheat. 277; Ferran's Est., 1 Ashm. 319; Hopkins v. Beebe, 26 Pa. 85; Patten v. Wilson, 34 Pa. 299; Caldwell v. Hartupee, 70 Pa. 74; Jermyn v. Moffitt, 75 Pa. 399; Lehigh V. R. Co. v. Woodring, 116 Pa. 513; Ruple v. Bindley, 91 Pa. 296; Phœnix Iron Co. v. Philadelphia, 2 W. N. 596; Murphy's Est., 4 W. N. 39; Philadelphia's App., 86 Pa. 179; Sibbald's Est., 18 Pa. 249; James v. Newton City, 142 Mass. 366; Row v. Dawson, 1 Ves. Sr. 331; Peugh v. Porter, 112 U. S. 737.

The master accordingly recommended a decree that the Union Improvement Co. pay to the plaintiff the sum of $1,600, with interest from September 14, 1888, and that the costs of the case be paid by the plaintiff and W. M. Monroe & Co., in equal proportions.

Exceptions to the report of the master, after argument there-

of were sustained by the court, HARE, P. J., who, on January 16, 1891, "in the belief that the draft was on a fund that never became due or payable to the drawer, and did not operate as an equitable assignment," entered a decree dismissing the bill and awarding the fund in controversy to the defendants, Monroe, Search and Marr. Thereupon, the plaintiff took this appeal, specifying inter alia that the court erred:

1. In awarding the fund in question to Monroe & Co.

3. In not awarding said fund to the extent of $1,600 to the plaintiff.

*Mr. George H. Troutman,* for the appellant:

1. The first objection made to the plaintiff's claim is that the order was a partial assignment. The notion as to the invalidity of partial assignments rests exclusively upon a dictum of Mr. Justice STORY, in Mandeville v. Welch, 5 Wheat. 277, which ought to have no weight, because (1) the question did not arise in that cause, there having been no assignment made; (2) the suit was at law, and an assignment creating an equitable title would not have been recognized, if there had been one; and (3) the dictum has been in terms overruled in this court: Caldwell v. Hartupee, 70 Pa. 77. Since the year 1675 there has never been any room to doubt the validity of partial assignments of any fund, by any creditor of any debtor, in courts of equity: Freeman's Ch., 145; Squib v. Wyn, 1 P. Wms. 381; Ferran's Est., 1 Ashm. 319; Patten v. Wilson, 34 Pa. 299; Sibbald's Est., 18 Pa. 249; Caldwell v. Hartupee, 70 Pa. 77; Peugh v. Porter, 112 U. S. 737; Christmas v. Russell, 14 Wall. 69; except where the debtor is a municipality: Philadelphia's App., 86 Pa. 179; Geist's App., 104 Pa. 351.

2. If there was no fund and nothing to assign, as the court below held, of course the plaintiff's case falls. But if there was such a fund, and it was assigned to the plaintiff, how could the debtor and Monroe & Co., or both combined, deprive us of it? We had notified the debtor, and that completed our title under the assignment: Bispham's Eq., § 168; Dearle v. Hull, 3 Russ. 1; Breech-loading Co., L. R. 5 Eq. 284. Yet, a subsequent assignment by Church of a balance due him, made up of retained percentages under the contract, has been allowed to defeat our claim. In holding that no debt ever became

payable that was assigned, the court below confused and used as synonymous the words due and payable: Grant v. Mechanics' Bank, 15 S. & R. 143; and forgot that, except unearned wages, there is no right arising ex contractu that is incapable of transfer or pledge: Bispham's Eq., §§ 164, 165; Jones on Mortgages, 152; Phila.' etc. R. Co. v. Woelpper, 64 Pa. 366; 3 Chitty's Eq. Index, 2118; Lett v. Morris, 4 Sim. 607; Holroyd v. Marshall, 10 H. L. Cas. 191.

3. The practical error of the court, however, was in supposing that the rights of the employer of Church required that the partly earned contract price should not be allowed to be treated as a debt for any purpose; whereas, saving the rights of the employer under the contract, the accidents or incidents of a debt existed for all purposes. We admit that if the company had the right to declare the contract forfeited, the plaintiff's claim might be lost through their applying this fund, on that footing, to payment for completing the work. But they could not honestly declare a forfeiture of the retained sum, when there was an assignee offering to step into the shoes of Church, and this would not be permitted by the law: Ex parte Lambton, L. R. 10 Ch. App. 415; Gibson v. Carruthers, 8 M. & W. 329.

*Mr. George M. Dallas* and *Mr. Richard C. McMurtrie* (with them *Mr. George L. Crawford*), for the appellees:

1. The argument for appellant in reference to the assignment of part of a fund in equity, is inapplicable, for we have in this case neither a fund in equity, nor anything in the relation of the parties, to call for the application of the asserted doctrine of the potency of a partial assignment of a fund. When this order was drawn, there was neither a debt nor a fund. The order was simply a draft against a future, contingent indebtedness. The draft was not accepted, and the contingent indebtedness never came into existence.

2. An order for the payment of money, cannot be made something different by calling it an assignment. The act of May 10, 1881, P. L. 17, requiring acceptance in writing, is a flat bar to the plaintiff: Maginn v. Savings Bank, 131 Pa. 364. The fallacy of much of appellant's argument results from the mistaken assumption that Monroe & Co.'s rights are based upon

Opinion of the Court.

their being the contractor's assignees, whereas the contract with them was a new and distinct one, carefully made so as to extinguish any possible equity of Church, and they were without notice or knowledge of the $1,600 order.

OPINION, MR. JUSTICE WILLIAMS:

No question of jurisdiction is raised in this case. The inquiry to be made on this appeal is not, therefore, whether the plaintiff has an adequate remedy at law, but whether it shows a good cause of action against the Union Improvement Co. Its demand is upon a draft or order drawn by A. H. Church in its favor upon the improvement company, for one thousand six hundred dollars. Church had taken a contract from the company to construct for it a drainage canal. He was to be paid monthly for his work upon estimates made by the engineer of the company. Ten per cent of the amount appearing to be due by the estimate was to be retained out of each payment until the contract was performed and the canal accepted. If the work was not pushed with sufficient vigor, the company reserved the right to employ such additional force of laborers as might be necessary, and charge the cost of the same to the account of Church, or to declare the contract void, and proceed to contract with other parties for the completion of the canal, "and any and all retained percentages" were in that case forfeited and became the property of the company. The contract was made on the first day of August, 1887, and the work was to be finished on or before the first day of January, 1888. The order was not drawn until the fourteenth of September, 1888, and was made payable "out of my final estimate." At that time the job was not half done, although the time within which it was to have been completed was past, and the treasurer of the company, to whom the order was presented, wisely refused to accept it. About one month later, Church became so badly embarrassed that he was unable to go on further. He was largely indebted, among others, to Monroe & Co. and to his employees. To secure the payment of the latter, to complete the contract, and to protect Monroe & Co. so far as possible, he assigned his contract and all unpaid percentages in the hands of the company to W. M. Monroe & Co. On the twenty-ninth of October, 1888, a written contract was entered into between

Opinion of the Court.

the company and Monroe for the completion of the canal, by which it was, inter alia, provided that Monroe should do the work necessary to be done, and receive "the same sums that would be paid under the contract to A. H. Church had he continued to prosecute the work in person;" and that he should pay the wages due from Church, and indemnify the company against "all suits, claims, demands, or liabilities to any person or persons arising under said Church, in respect to the said contract of August 1, 1887, or the money due under it." Monroe et al. proceeded promptly and successfully with the construction of the canal, doing work amounting, according to the engineer's estimates, to more than seventy thousand dollars. The work has been accepted and paid for, except that the sum of one thousand six hundred dollars and interest is retained, upon the claim of the plaintiff that it must be paid upon the order of Church, given in September, 1888, while he was still at work under his control.

Does the plaintiff show a right to demand this money?

As this order was never accepted, the company is not liable for it upon any undertaking of its own. If any liability exists, it must rest on the act of Church in drawing and delivering the order. But he could impose no duty to pay to the holder on one who was under no duty to pay him. If there was a debt due him, or a fund belonging to him, in the hands of the company, he could draw upon that fund and clothe the payee with a right to demand payment; but if he had no right to payment he could confer none. As we understand the facts, the improvement company did not owe Church when the order was drawn. It held some of the accrued percentages in its hands, under the terms of the contract. Whether these would ever be demandable by Church depended on whether he should be able to complete the work he had undertaken, and he drew the order with this contingency in mind. It was payable, not out of accrued percentages, but "out of my final estimate," when the contract should be performed. Unless the work was done by him he would be entitled to no "final estimate;" the percentages would belong to the improvement company, and the fund on which the order was drawn would have no existence. What was the fact? Church failed. He transferred his contract to another. The improvement company made a new contract with

Monroe & Co., by whom the work was done, and to whom, by the express agreement of the company, the accrued percentages became payable. Church had no final estimate, and no right to one; and the fund on which he drew never came into existence.

But it is urged that when the order was drawn there was an amount of percentages in the hands of the company sufficient to pay it, and that the order operated as an assignment of so much of this fund to the holder. But Church could not assign a fund on which he had no legal hold. His interest in the percentages was a conditional one. The fund was in pledge for his performance of his contract; and if the order be treated as an equitable assignment, the assignee must take his title as his assignor held it, subject to the pledge. When Church failed and was compelled to give up his contract, his rights under it were by his own acts extinguished. True, he assigned his contract, but that gave his assignee no right to proceed. The improvement company afterwards contracted with Monroe & Co., to whom he had assigned, but, as is expressly stated in the contract, this was done because the company believed Monroe & Co. could complete the work " at less cost and expense " than it could, and might be thereby able to " derive some benefit from it " in reimbursing themselves for advances made to Church. The fund now in controversy was not produced by Church. It is not due under his contract; and his order gives to the holder no interest in it, whether the retained percentages in the hands of the company when he failed enter into it or not. Nor does the agreement of Monroe & Co. to indemnify the improvement company against claims and demands arising under the contract with Church affect the question. If the company is not legally liable to the plaintiff on the order, the obligation of the contract to indemnify does not extend beyond the costs of a defence. Monroe & Co. did not undertake to pay whatever claims might be presented against Church without regard to their validity, but to indemnify the company against them. This agreement requires payment of those that may be legally enforced against the company, and a defence against such as are unfounded.

The real question in this case is, as we have said, whether the plaintiff has a valid claim against the improvement company

on the order of Church. There are no equitable considerations disclosed that change the character of this question, or that prevent Monroe & Co. from insisting on their clear legal rights. The learned judge was right, therefore, in his conclusions, and

The decree dismissing the plaintiff's bill is affirmed; the costs of this appeal to be paid by the appellant.